# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00974** |
| | ) | **Judge Aleta A. Trauger** |
| **COREY BUCCIARELLI, HOUSTON** | ) | |
| **COUNTY BOARD OF EDUCATION,** | ) | |
| **KRIS MCASKILL, officially and** | ) | |
| **individually, MARK BEAL, officially and** | ) | |
| **individually, ANDREA MARTIN,** | ) | |
| **officially and individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court are (1) plaintiff Jane Doe's Motion for Judgment on the Pleadings ("Motion for Judgment") (Doc. No. 22) and (2) defendant Corey Bucciarelli's Amended Motion for Leave to Amend Counter-Complaint ("Motion to Amend") against Counter-Defendant Jane Doe (Doc. No. 35).

Although the Motion for Judgment seeks dismissal of Bucciarelli's original Counter-Complaint (Doc. No. 9), the plaintiff's Opposition to the Motion to Amend is based solely on the purported futility of the proposed amendment, and it largely reiterates the arguments made in the Motion for Judgment. Bucciarelli's Motion to Amend attempts to address any shortcomings in his original Counter-Complaint. The court finds that the Motion for Judgment was not mooted by the Motion to Amend but can instead be construed as addressed to the claims set forth in the proposed Amended Counter-Complaint (Doc. No. 35-1), filed with the Motion to Amend.

Further, for the reasons set forth herein, the court finds that the proposed amendment would not be futile. Accordingly, the defendant's Motion to Amend will be granted and the plaintiff's Motion for Judgment will be denied.

## I.  PROCEDURAL HISTORY

Plaintiff Jane Doe, proceeding under a pseudonym, filed her original Complaint initiating this action in the Circuit Court for Houston County, Tennessee on April 24, 2024. After she filed an Amended Complaint on July 11, 2024, adding a federal claim under 42 U.S.C. § 1983, the defendants who had been served, Bucciarelli and the Houston County Board of Education, removed the case to this court on the grounds of federal question jurisdiction. (*See* Notice of Removal, Doc. No. 1; Am. Compl., Doc. No. 1-2.)

In the Amended Complaint, Jane Doe alleges that she is a former Assistant Principal in the Houston County Schools and that Bucciarelli was formerly employed as a teacher at the same school in which she worked. She alleges that she complained to school administrators about sexual harassment by Bucciarelli beginning in the spring of 2022, but the school administrators did not take her seriously, did not investigate her allegations, and did not discipline Bucciarelli. The plaintiff alleges that she was sexually assaulted by Bucciarelli in January 2023 and then raped by him on school grounds on April 25, 2023 and again on May 16, 2023. (Am. Compl. ¶¶ 17–36.)

In July 2023, Houston County Schools opened an investigation to determine whether Jane Doe had engaged in inappropriate conduct involving Bucciarelli "and/or" his wife, based on allegations brought by either Bucciarelli or his wife. (*Id.* ¶ 40.) On July 13, 2023, Jane Doe was informed that she was being suspended.[1] (*Id.* ¶ 42.) Jane Doe met with school administrators on

---

[1] She was later briefly reinstated but assigned to a different school and then suspended again pending resolution of the investigation and charges against Bucciarelli.

July 25, 2023 to discuss the allegations against her. During this meeting, she informed school administrators for the first time of the "multiple rapes by Bucciarelli." (*Id.* ¶ 43.)

She filed a report with the Houston County Sheriff the same day. (*Id.* ¶ 44.) On April 15, 2024, a Houston County Grand Jury indicted Bucciarelli on two counts of rape and one count of sexual battery. Those charges remain pending. (*Id.* ¶¶ 52.)

Jane Doe, meanwhile, remains suspended, or has perhaps been terminated, though she is not under criminal investigation and no charges have been brought against her that would justify termination. (*Id.* ¶¶ 54–57.)

In the Amended Complaint, Jane Doe asserts claims against Bucciarelli under Tennessee law for battery and "outrage" (which the court construes as a claim for intentional infliction of emotional distress ("IIED")). She asserts claims against Houston County for negligent hiring, negligent retention, negligence, sexual harassment and retaliation under the Tennessee Human Rights Act, violation of the PEPFA (which the court understands to be a reference to the Tennessee Public Employees Political Freedom Act, Tenn. Code Ann. § 8-50-603),[2] and violation of the Tennessee Teacher Tenure Act ("TTTA"). She asserts a claim against Houston County, Assistant Direct of Schools Mark Beal, Director of Schools Kris McAskill, and Houston County Middle School Principal Andre Martin under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment rights to substantive and procedural due process.

On August 16, 2024, Bucciarelli answered the Amended Complaint and filed a Counter-Complaint. (Doc. No. 9.) The Counter-Complaint vaguely incorporates by reference his "answers

---

[2] A claim under the PEPFA requires retaliation based on an employee's exercise of her right to communicate with an elected official. *See* Tenn. Code Ann. § 8-50-603(a). It appears that the plaintiff may have intended instead to assert a claim under the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304.

listed [in paragraphs] 1–119" and, based on those allegations, asserts claims against Jane Doe for "outrageous conduct" (which the court construes as an IIED claim) and defamation, based on Bucciarelli's allegations that the plaintiff "intentionally and recklessly . . . made false claims of rape and unwanted sexual conduct" against Bucciarelli in order to protect her own job and that she made those statements "to school administrators and law enforcement" while knowing that they were false, causing damage to his reputation. (Counter-Complaint ¶¶ 2, 5, 7–8.)

Jane Doe responded to the Counter-Complaint by filing her Motion for Judgment, in which she argues that (1) the IIED and defamation claims are both barred by the applicable statutes of limitation; (2) the Counter-Complaint fails to state a colorable IIED claim because Bucciarelli fails to "substantiate his claims or present any facts that contradict Doe's allegations" that he raped her and, further, fails to allege "severe mental injury," as required to state an IIED claim under Tennessee law (Doc. No. 23 at 5); (3) the Counter-Complaint fails to state a colorable defamation claim, because Bucciarelli does not "describe the content or substance of any of the alleged 'false' comments made or otherwise explain how these imaginary comments are defamatory" and fails to adequately plead economic injury or damage to his reputation (*id.* at 8–9); (4) Bucciarelli's defamation claim is barred by the "'libel-proof plaintiff' defense" and the Tennessee Public Participation Act (*id.* at 9, 11); and (5) Jane Doe is immune from the claim under the absolute litigation privilege (*id.* at 10).

Bucciarelli opposed the plaintiff's Motion for Judgment, arguing both that his original Counter-Complaint stated colorable claims but also that he intended to file a motion requesting leave to amend the Counter-Complaint to include "recently obtained information" substantiating his claims. (Doc. No. 30 at 4.) Indeed, he filed his Motion to Amend, supporting Memorandum, and proposed Amended Counter-Complaint shortly thereafter. (Doc. Nos. 31, 31-1, 32.) Unlike

the original, the proposed Amended Counter-Complaint provides the factual backdrop for Bucciarelli's claims. He alleges specifically that he and the plaintiff engaged in a consensual extra-marital sexual relationship beginning in February 2023 and continuing through July 2023. (Prop. Am. Counter-Compl., Doc. No. 31-1 ¶¶ 24–30, 33.) In July 2023, Bucciarelli allegedly began to feel guilty about the relationship, confessed it to his wife, and cut off contact with Jane Doe. (*Id.* ¶¶ 35–36.) His wife then made a formal complaint about Jane Doe to school administrators, based on her engaging in an inappropriate relationship with a subordinate. (*Id.* ¶ 37.) This complaint resulted in Doe's suspension and to Doe's accusing Bucciarelli, for the first time, of rape and non-consensual sexual conduct. (*Id.* ¶¶ 38–39.)

Although Bucciarelli acknowledges that Jane Doe first told school administrators and the Houston County Sheriff on July 25, 2023 that he had raped her, he does not indicate when he learned that she had done so. He does allege that she has "repeatedly and continuously made these false allegations against Bucciarelli." (*Id.* ¶ 40.) More specifically, he claims that she has repeated these allegedly false accusations in text messages to various people on August 22, 2023, October 24, 2023, February 7, 2024, March 14, 2024, April 26, 2024, April 27, 2024, May 12, 2024, and May 22, 2024. (*Id.* ¶ 44(a)–(j).)

Based on these allegations, the proposed Amended Counter-Complaint re-asserts the claims for IIED and defamation. This time, under the IIED claim, Bucciarelli specifically asserts that "[a] woman intentionally or recklessly making false claims accusing a man of rape and unwanted sexual conduct for purposes of her own self-promotion and/or protection is not tolerated by a civilized society" and that, as a result of the false claims, he has suffered irreparable damage to his reputation and "severe stress and mental harm resulting in physical manifestations." (*Id.* ¶¶ 51–52.)

As noted above, Jane Doe opposes the Motion to Amend on the grounds of futility.[3] (Doc. No. 40.) She argues very generally that Bucciarelli has not met his burden of showing that "there are plausible facts" supporting his claim that Jane Doe was *not* raped by Bucciarelli and that "[i]t would be improper to allow a defamation suit to proceed before determining the validity of Doe's statements." (*Id.* at 2–3.) According to the plaintiff, the facts alleged in the proposed Amended Counter-Complaint are "irrelevant to whether Corey Bucciarelli raped Doe, nor does it change the fact that a grand jury indicted him for that crime." (*id.* at 3.) She continues to assert that the IIED claim accrued on July 25, 2023, when the plaintiff first reported the alleged rapes to school administrators and the Houston County Sheriff, and expired one year later, on July 25, 2024, before the defendant filed his original Counter-Complaint. She asserts that the proposed Amended Counter-Complaint fails to sufficiently allege facts supporting outrageous conduct or the requisite serious mental injury. She also continues to assert that Bucciarelli's defamation claim is subject to a six-month limitation period for spoken slander and that his claims are barred by the libel-proof plaintiff doctrine, the absolute litigation privilege, and the Tennessee Public Participation Act.

## II.     THE MOTION TO AMEND

### A.     Standard of Review

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only with the opposing party's consent or by leave of court. Rule 15(a)(2) adds that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this "liberal amendment policy," the denial of a motion to amend "may be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

---

[3] The other defendants filed notices stating that they do not oppose the Motion to Amend. (Doc. Nos. 37, 41.)

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (first quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); and then *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). The party opposing a motion to amend has the burden of establishing futility. *Mason Sales, LLC v. Talent Creation, Ltd.*, No. 3:24-cv-00092, 2025 WL 696529, at *4 (M.D. Tenn. Mar. 4, 2025) (Newbern, M.J.) (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6)—like a motion under Rule 12(c)—tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (confirming that the same standard of review applies to motions under Rule 12(b)(6) and Rule 12(c)). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

**B.      Analysis**

Jane Doe opposes the proposed amendment solely on the basis of futility. The court is not persuaded by the plaintiff's arguments, which largely rely on defenses and factual disputes that cannot be resolved at this stage of the proceedings.

*1.    Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must allege that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 21 (Tenn. 2021) (citation omitted). "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Id.* (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. h).

State statutes of limitation apply to diversity actions brought in federal court. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 745 (1980) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)). In addition to statutes of limitation, the "closely related questions of tolling and application" are "governed by state law." *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (quoting *Wilson v. Garcia*, 471 U.S. 261, 269 (1985)). As relevant here, under Tennessee law, IIED "is a personal injury tort, governed by the general one-year statute of limitations" in Tenn. Code Ann. § 28-3-104. *Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004). However, an IIED claim may be subject to the discovery rule. *Id.* The discovery rule is an equitable doctrine that serves to "toll[] the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Durham v. Est. of Losleben*, 624 S.W.3d 492, 497 (Tenn. Ct. App. 2020) (quoting *Smith v. Hauck*, 469 S.W.3d 564, 569–70 (Tenn. Ct. App. 2015)).

Jane Doe asserts that Bucciarelli's IIED claim is time-barred, because it is undisputed that she first told school administrators and law enforcement on July 25, 2023 that he had raped her,

but the Counter-Complaint was filed more than one year later. Jane Doe does not allege, however, that Bucciarelli learned that she had made those statements on July 25, 2023, and the record does not actually reveal when he first learned that she had (allegedly falsely) accused him of rape. He was not indicted and arrested until the spring of 2024, well within the limitations period.

The statute of limitations is an affirmative defense on which the defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Generally, it is not appropriate to grant a Rule 12(b)(6) (or Rule 12(c)) motion to dismiss on the basis of an affirmative defense, because a plaintiff is not ordinarily required to anticipate and plead facts to avoid potential defenses. *See, e.g.*, *Est. of Barney v. PNC Bank, N.A.*, 714 F.3d 920, 926 (6th Cir. 2013); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). At the same time, the Sixth Circuit has recognized that, when the "face of the complaint discloses a failure to file within the time allowed," a plaintiff incurs an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 744 (6th Cir. 1992). That is, a motion to dismiss can be granted based on the statute of limitations "if a plaintiff affirmatively pleads himself out of court." *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014).

Here, neither the Amended Complaint nor the proposed Amended Counter-Complaint suggests that Bucciarelli was present at either of the meetings when Jane Doe first voiced her accusations. Although the alleged facts do not reveal when the limitations period accrued, it does not affirmatively appear from the face of the Counter-Complaint that Bucciarelli's IIED claim based on Jane Doe's allegedly false rape charges is time-barred. The court finds that Bucciarelli has not "plead[ed] himself out of court." *Rembisz*, 590 F. App'x at 504. Although discovery may

ultimately reveal that he learned of the accusations more than a year before he filed suit, the court finds that dismissal on statute of limitations grounds at this stage is not warranted.

As for whether the proposed Amended Counter-Complaint states a colorable IIED claim, the court finds that, under the facts as alleged at least, false accusations of rape are sufficiently outrageous to give rise to an IIED claim. *Accord Hunt v. S. Baptist Convention*, No. 3:23-cv-00243, 2024 WL 1019276, at *5 (M.D. Tenn. Mar. 8, 2024) (denying motion to dismiss IIED claim based on allegations that the defendant intentionally published allegations against him that created a false impression that the plaintiff had criminally assaulted the wife of a fellow pastor); *see also Iglesias v. O'Neal*, No. CV 16-6291 (RBK/AMD), 2017 WL 1170835, at *3 (D.N.J. Mar. 29, 2017) (denying motion to dismiss IIED claim under New Jersey law, stating "it is certain that a false accusation of rape is intolerable in a civilized community"); *Mangan v. Rumo*, 226 F. Supp. 2d 250, 254 (D. Me. 2002) ("Intentionally false allegations of rape could amount to outrageous behavior intolerable in a civilized society." (citations omitted)).

Jane Doe's argument to the contrary is premised upon the assumption that her accusations were not false. (*See* Doc. No. 40 at 6 ("Expressing her own umbrage over being raped and telling people . . . does not meet the standard [for outrageous conduct].").) Indeed, true accusations of rape could not give rise to an IIED claim. However, for purposes of reviewing the proposed Amended Counter-Complaint, the court must accept as true Bucciarelli's allegations that he and Jane Doe engaged in a consensual sexual relationship and that he did not rape her.

The plaintiff also asserts that Bucciarelli's allegations of injury are not sufficient to state a an IIED claim. Bucciarelli alleges, however, that he suffered "permanent damage to his reputation and severe stress and mental harm resulting in physical manifestations." (Doc. No. 35-1 ¶ 52.)

While somewhat threadbare, these allegations are sufficient at the pleading stage and can be fleshed out through discovery.

The court finds that the IIED claim, as pleaded in the proposed Amended Counter-Complaint, is not futile.

2. *Defamation*

"To establish a *prima facie* case of defamation, a plaintiff must prove that: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013) (citation omitted). In addition, "to establish any type of defamation claim, whether slander or libel, the claimant must prove that the defamation resulted in injury to the person's character and reputation." *Id.* (citation omitted). "'Publication' is a term of art meaning the communication of defamatory matter to a third person." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citation omitted). "[A] new cause of action arises with each publication." *Id.* (citation omitted).

Spoken slander is subject to a six-month statute of limitations in Tennessee. Tenn. Code Ann. § 28-3-103. That short limitations period is not tolled by the discovery rule. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994). Libel, or written defamation, is governed by a one-year limitations period. Tenn. Code Ann. § 28-3-104(a)(1)(A). The limitations period accrues "on the date the alleged libel is published." *Ali v. Moore*, 984 S.W2d 224, 228 (Tenn. Ct. App. 1998). However, the discovery rule may toll the limitation period for libel claims in "limited situations where the allegedly libelous statement occurred in private or confidential publications which are not readily available to the plaintiff or the general public." *Id.* (citation omitted); *see also Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 501 (6th Cir. 2015).

In this case, insofar as Bucciarelli's defamation claim is premised upon the plaintiff's spoken iteration of her rape allegations to school administrators and the Houston County Sheriff in July 2023, any such claim is barred by the six-month statute of limitations for slander. However, Bucciarelli also alleges numerous instances of private, written, allegedly libelous statements made in text messages within the limitations period. (*See* Doc. No. 35-1 ¶ 44(a)–(j).) The proposed Amended Counter-Complaint does not state when Bucciarelli discovered these statements, but they all are alleged to have occurred within one year prior to the filing of the original Counter-Complaint. Claims based on these statements are not time-barred.[4]

Jane Doe also contends that Bucciarelli's defamation claim is futile due to the "libel-proof plaintiff" doctrine. The Tennessee Court of Appeals has explained that the libel-proof plaintiff doctrine embodies the concept that "a notorious person is without a 'good name' and therefore may not recover for injury to it." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001). It has typically been applied in situations where the plaintiff is admittedly a criminal but complains that a "publication accused him of the wrong crimes." *Id.* (collecting cases). "In essence, 'the basis for an action for defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the person's character and reputation,' and logically 'a person without reputation has nothing for the law of defamation to protect.'" *Horn-Brichetto v. Smith*, No. 3:17-CV-163, 2019 WL 921454, at *15 (E.D. Tenn. Feb. 25, 2019) (quoting *Davis*, 83 S.W.3d at 128).

The principle behind the doctrine is that the plaintiff claiming defamation *already* has a poor reputation at the time of the alleged publication. It does not apply in this case, where any

---

[4] The proposed Amended Counter-Complaint was accompanied by the Affidavit of Bucciarelli's counsel, who avers that his office "obtained new information referenced in the proposed Amended Counter-Complaint on January 17, 2025 from [Bucciarelli's] criminal defense counsel." (Doc. No. 36-1, Potter Aff. ¶ 3.)

damages to Bucciarelli's reputation were allegedly caused by Jane Doe's (allegedly false) rape allegations and criminal charges. Courts generally agree that falsely accusing someone of rape may support a defamation claim. *See, e.g.*, *Elias v. Rolling Stone LLC*, 872 F.3d 97, 111 (2d Cir. 2017) (reversing trial court's dismissal of defamation claims brought by members of a university fraternity against defendants who published purportedly false allegations of gang rape in a fraternity house); *Hales v. Alexis Preston*, No. 1:24cv00045/AW/ZCB, 2024 WL 4342735, at *4 (N.D. Fla. Aug. 26, 2024) (recommending that the motion to dismiss defamation claim be denied, stating: "There are few accusations that could be more harmful to a person than false accusations of sexually abusing others."), *report and recommendation adopted*, No. 1:24-cv-45-AW-ZCB, 2024 WL 4336630 (N.D. Fla. Sept. 27, 2024); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 176 (E.D.N.Y. 2019) (refusing to dismiss defamation claim based upon the defendant's reposting of allegedly false accusations of rape).

The plaintiff claims next that she is protected by the absolute litigation privilege. This privilege, when it applies, may provide complete immunity to defamation claims. Tennessee courts applying the privilege have held that "defamatory statements by a judge, witness, counsel, or party '*made in the course of a judicial proceeding*, if pertinent or relevant, are absolutely privileged, and this is true regardless of whether they are malicious, false, known to be false, or against a stranger to the proceeding.'" *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 23 (Tenn. 2007) (emphasis added) (quoting *Jones v. Trice*, 360 S.W.2d 48, 54 (Tenn. 1962)); *see also Lambdin Funeral Serv. Inc. v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978) ("It is generally recognized that statements made *in the course of a judicial proceeding* that are relevant and pertinent to the issues involved are absolutely privileged . . . even in those situations where the statements are made maliciously." (emphasis added)). The plaintiff presents no legal basis to

support the proposition that allegedly defamatory text messages to Jane Doe's friends and contacts are protected by an absolute litigation privilege; nor does she provide a basis for applying the privilege to statements to school administrators during an administrative investigation or to police officers during a criminal investigation.

Finally, the court finds that the plaintiff's reliance on the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. § 20-17-101 *et seq.*, is unwarranted. The TPPA was enacted in 2019 and "is Tennessee's version of an anti-SLAPP statute." *Charles v. McQueen*, 693 S.W.3d 262, 267 (Tenn. 2024).[5] The TPPA prescribes a specific procedure for petitioners to follow for pursuing dismissal of a lawsuit the petitioners believe to qualify as a SLAPP lawsuit. *See* Tenn. Code Ann. §§ 20-17-104 through -106.

Although the Sixth Circuit has not weighed in on this question, virtually every federal district court in Tennessee has held that the procedural mechanisms of the TPPA conflict with the procedures established in the Federal Rules of Civil Procedure governing dismissal of cases and are, therefore not available in federal court. *See, e.g.*, *Amacher v. City of Tullahoma*, No. 4:23-CV-40, 2024 WL 4778027, at *8 (E.D. Tenn. Nov. 13, 2024); *FemHealth USA, Inc. v. Williams*, No. 3:22-CV-00565, 2023 WL 5498055, at *5 (M.D. Tenn. Aug. 23, 2023) (Campbell, J.); *Santoni v. Mueller*, No. 3:20-cv-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022) (Richardson, J.); *Mucerino v. Martin*, No. 3:21-cv-00284, 2021 WL 5585637, at * 6 (M.D. Tenn. Nov. 30, 2021) (Trauger, J.); *Hughes v. Gupta*, 613 F. Supp.3d 1054, 1057 (W.D. Tenn. 2021).

This court again concludes that the TPPA's procedures do not apply in federal court. And even if they did, Jane Doe has not pursued them.

---

[5] The acronym "SLAPP" stands for "strategic lawsuits against public participation." *Charles*, 693 S.W.3d at 267.

## III.    CONCLUSION

The court finds, in sum, that Bucciarelli's claims in the proposed Amended Counter-Complaint are not futile—except insofar as he intended to bring a slander claim based on Jane Doe's allegedly slandering him at meetings with school administrators and law enforcement officials on July 25, 2023. The Motion to Amend (Doc. No. 35) will be granted, and the plaintiff's Motion for Judgment (Doc. No. 22) will be denied.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge